JAMES A. MARISSEN (SBN: 257699)
jmarissen@grsm.com
RACHEL A. WEITZMAN (SBN: 307076)
rweitzman@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614
Telephone: (949) 255-6996
Facsimile: (949) 474-2060

Attorneys for Plaintiff
APL CO. PTE LTD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APL CO. PTE LTD<br><br>        Plaintiff,<br><br>    vs.<br><br>TDR LOGISTICS INC.; ANDPLASTIC TRADE LTD.; and ANDPLASTIC TRADE CO., LTD.<br><br>        Defendants. | CASE NO.<br><br>**PLAINTIFF APL CO. PTE LTD'S COMPLAINT** |

COMES NOW Plaintiff, APL CO. PTE LTD ("APL"), and its Complaint and causes of action against Defendant TDR LOGISTICS INC. ("TDR"), ANDPLASTIC TRADE LTD. ("ANDPLASTIC"), and ANDPLASTIC TRADE CO., LTD. ("ANDPLASTIC CO.") alleges as follows:

**JURISDICTION AND VENUE**

1.    This is a maritime claim for breach of contract and unpaid detention, demurrage, destruction and/or other costs pursuant to ocean bills of lading and an ocean carrier's tariff and comprises an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333(1).  It also presents a federal question under 28 U.S.C. § 1331 in that it arises under the Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101 et seq.

-1-
PLAINTIFF APL CO. PTE LTD'S COMPLAINT

2. In the alternative, as there is complete diversity between APL on one hand, and TDR, ANDPLASTIC and ANDPLASTIC CO. on the other hand, and the amount in controversy exceeds jurisdictional amount set by 28 U.S.C. § 1332, the prerequisites for diversity jurisdiction under 28 U.S.C. § 1441(b) are met and this Court is vested with subject matter jurisdiction over this action.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (3) in that a substantial part of the events or omissions giving rise to the claim occurred within this district, and TDR is a resident of this state within the meaning of 28 U.S.C. § 1391(c)(2), with its principal place of business within the judicial district of this Court and there is no other district in which an action may otherwise be brought. Venue is also proper in this Court as it is the contractually agreed upon forum pursuant to the operative ocean bills of lading.

## PARTIES

4. Plaintiff APL is now, and at all material times was, a foreign corporation duly organized and existing under the laws of Singapore, with a principal place of business 9 North Buona Vista Drive #14-01, The Metropolis Tower 1, Singapore, 138588. APL was, and is, an ocean carrier and common carrier of goods for hire on ocean-going vessels between United States ports and foreign ports.

5. Defendant TDR LOGISTICS, INC. is now, and at all material times was, a corporation organized and existing under the laws of California, with its principal place of business at 21671 Gateway Ctr. Dr., Ste 110, Diamond Bar, CA 91765.

6. Defendant ANDPLASTIC TRADE LTD. is now, and at all material times was, a corporation organized and existing under the laws of the Marshal Islands, with its principal place of business at Trust Company Complex, Ajeltake Rd, Ajeltake Island Majuro Republic of the Marshal Islands 96960.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

7.      Defendant ANDPLASTIC TRADE CO. LTD. is now, and at all material times was, a corporation organized and existing under the laws of Hong Kong, with its principal place of business at Trend Centre, 29-31 Cheung Lee Street, Chai Wan, Hong Kong.

8.      APL alleges that there may be additional entities or individuals that may be responsible in some manner for the occurrences and injuries alleged in this Complaint.  Their names and capacities are currently unknown to APL at this time. APL will amend this Complaint to add such additional parties when the same have been ascertained.  APL is informed, believes and thereon alleges that each additional entity or individual is liable for the acts and/or omissions as set forth below, and that APL's rights against such additional entity or individual arises from such acts and/or omissions.

## FACTUAL BACKGROUND

9.      Between May and August 2019, ANDPLASTIC and ANDPLASTIC CO. contracted with TDR for the shipment of eighty-five (85) containers ("Containers") of plastic scrap cargo from various ports of loading to Jakarta, Indonesia.

10.     TDR subsequently contracted with APL for the carriage of the Containers under thirty-seven (37) APL Bills of Lading as follows:

    i.      APL Bill of Lading AVB0100146 dated May 4, 2019, with container nos. TCLU1505422, BMOU4012110, and CMAU4341099 aboard the M/V *Jamila* from San Juan, Puerto Rico to Jakarta, Indonesia ("Shipment 1");

    ii.     APL Bill of Lading AYU0212485 dated May 18, 2019, with container no. TEMU6456077 aboard the M/V *Ever Lucid* from Baltimore, Maryland to Jakarta, Indonesia ("Shipment 2");

    iii.    APL Bill of Lading AYU0221035 dated May 22, 2019, with container nos. TGHU9100230, APHU6307602, and

CMAU4708420 aboard the M/V *Ever Lambent* from Boston, Massachusetts to Jakarta, Indonesia ("Shipment 3");

    iv. APL Bill of Lading AYU0221031 dated May 26, 2019, with container no. CMAU4110696 aboard the M/V *Triton* from Baltimore, Maryland to Jakarta, Indonesia ("Shipment 4");

    v. APL Bill of Lading AYU0221100 dated May 29, 2019, with container nos. GVCU5002338, CMAU4734080, BEAU4062517, and TGHU6096590 shipped aboard the M/V *CMA CGM Libra* from New York, New York to Jakarta, Indonesia ("Shipment 5");

    vi. APL Bill of Lading AYU0221069 dated May 30, 2019, with container no. ECMU9734018 shipped aboard the M/V *CMA CGM Tancredi* from Miami, Florida to Jakarta, Indonesia ("Shipment 6");

    vii. APL Bill of Lading AYU0221052 dated May 31, 2019, with container no. CMAU7704578 shipped aboard the M/V *CMA CGM Libra* from Columbus, Ohio to Jakarta, Indonesia via the port of Norfolk, Virgina ("Shipment 7");

    viii. APL Bill of Lading AYU0221062 dated June 2, 2019, with container nos. TLLU4394568 and GESU6817230 shipped aboard the M/V *CMA CGM Tancredi* from Jacksonville, Florida to Jakarta, Indonesia ("Shipment 8");

    ix. APL Bill of Lading AYU0221029 dated June 3, 2019, with container nos. ECMU9452668, BMOU4524646, and TRLU6652430 aboard the M/V *CMA CGM Libra* from Atlanta, Georgia to Jakarta, Indonesia via the port of Savannah, Georgia ("Shipment 9");

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

      x.    APL Bill of Lading AYU0221063 dated June 4, 2019, with container nos. CRSU9303154 and GESU5857222 shipped aboard the M/V *CMA CGM Libra* from Memphis, Tennessee to Jakarta, Indonesia via the port in Charleston, South Carolina ("Shipment 10");

      xi.    APL Bill of Lading AYU0221101 dated June 5, 2019, with container no. TRLU7289612 shipped aboard the M/V *APL Miami* from New York, New York to Jakarta, Indonesia ("Shipment 11");

      xii.    APL Bill of Lading AYU0221036 dated June 5, 2019, with container nos. CMAU4822113, TGHU9842619, and TLLU4344762 aboard the M/V *Ever Laurel* from Boston, Massachusetts to Jakarta, Indonesia ("Shipment 12");

      xiii.    APL Bill of Lading AYU0221034 dated June 5, 2019, with container nos. CMAU5650214 and CMAU6293169 aboard the M/V *Ever Laurel* from Boston, Massachusetts to Jakarta, Indonesia ("Shipment 13")

      xiv.    APL Bill of Lading No. AYU0221106 dated June 10, 2019, with container nos. CMAU5318600, TCNU4145203, BEAU4125148, APHU6510564, and SEGU6077101 aboard the M/V *APL Miami* from Savannah, Georgia to Jakarta, Indonesia ("Shipment 14");

      xv.    APL Bill of Lading No. AYU0221030 dated June 10, 2019, with container no. GESU6470182 aboard the M/V *APL Miami* from Atlanta, Georgia to Jakarta, Indonesia via the port of Savannah, Georgia ("Shipment 15");

      xvi.    APL Bill of Lading AYU0221056A dated June 11, 2019, with container no. ECMU9944020 shipped aboard the M/V *CMA*

*CGM Amazon* from Dallas, Texas to Jakarta, Indonesia via the port of Los Angeles, California ("Shipment 16");

xvii. APL Bill of Lading AYU0230222 dated June 13, 2019, with container nos. CRSU9368915 and ECMU9937205 shipped aboard the M/V *Ever Lasting* from New York, New York to Jakarta, Indonesia ("Shipment 17");

xviii. APL Bill of Lading AVB0100243 dated June 15, 2019, with container nos. CMAU4530852, APHU7125794, CAIU9669719, ECMU9695098, TGHU8728176, APHU6568864, and GESU6194757 aboard the M/V *Allegro N* from San Juan, Puerto Rico to Jakarta, Indonesia ("Shipment 18");

xix. APL Bill of Lading AYU0240068 dated June 15, 2019, with container nos. ECMU9512279, CMAU5313569, and TRLU7078878 shipped aboard the M/V *CMA CGM Dalila* from Miami, Florida to Jakarta, Indonesia ("Shipment 19");

xx. APL Bill of Lading AYU0221056B dated June 17, 2019, with container nos. CAIU9309137 and APHU6402385 shipped aboard the M/V *APL Mexico City* from Dallas, Texas to Jakarta, Indonesia via the port of Los Angeles, California ("Shipment 20");

xxi. APL Bill of Lading AYU0234695 dated June 19, 2019, with container nos. TLLU4333794 and FCIU9217785 shipped aboard the M/V *CMA CGM Thalassa* from New York, New York to Jakarta, Indonesia ("Shipment 21");

xxii. APL Bill of Lading AYU0230202 dated June 19, 2019, with container nos. TCNU6634538, TLLU4318892, TCNU1163939, ECMU9539900, APHU6922279, and TCLU6454781 aboard

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

the M/V *CMA CGM Elbe* from Charleston, South Carolina to Jakarta, Indonesia ("Shipment 22");

xxiii. APL Bill of Lading AYU0230200A dated June 20, 2019, with container nos. TGHU6279923, CMAU4304515, CAIU9413331, and CMAU7912503 aboard the M/V *Ever Legion* from Baltimore, Maryland to Jakarta, Indonesia ("Shipment 23");

xxiv. APL Bill of Lading AYU0230200B dated June 20, 2019, with container no. CMAU6321770 aboard the M/V *Ever Legion* from Baltimore, Maryland to Jakarta, Indonesia ("Shipment 24");

xxv. APL Bill of Lading AYU0230201 dated June 20, 2019, with container no. TCNU5374225 aboard the M/V *Ever Leader* from Boston, Massachusetts to Jakarta, Indonesia ("Shipment 25");

xxvi. APL Bill of Lading AYU0230216 dated June 21, 2019, with container nos. CMAU4259144, CAIU8083148, and BEAU4156848 aboard the M/V *CMA CGM Elbe* from Memphis, Tennessee to Jakarta, Indonesia via the port of Charleston, South Carolina ("Shipment 26");

xxvii. APL Bill of Lading AYU0234689 dated June 26, 2019, with container nos. TCLU1872264, TCKU6264439, and APHU7391623 shipped aboard the M/V *Ever Lasting* from Baltimore, Maryland to Jakarta, Indonesia ("Shipment 27");

xxviii. APL Bill of Lading AYU0230211 dated June 27, 2019, with container nos. ECMU9866523 and TCNU8460435 aboard the M/V *APL Yangshan* from Dallas, Texas to Jakarta, Indonesia via the port of Los Angeles, California ("Shipment 28");

xxix. APL Bill of Lading AYU0239079 dated June 28, 2019, with container no. FCIU8111839 aboard the M/V *CMA CGM Cendrillon* from Tampa, Florida to Jakarta, Indonesia ("Shipment 29");

xxx. APL Bill of Lading AYU0239069 dated July 4, 2019, with container nos. BEAU4083171, BEAU4769808, TGHU9509721, TGHU9740788, and CMAU5357660 shipped aboard the M/V *Ever Loyal* from Baltimore, Maryland to Jakarta, Indonesia ("Shipment 30");

xxxi. APL Bill of Lading AYU0221032A dated July 10, 2019, with container no. APHU6846374 aboard the M/V *Ever Learned* from Baltimore, Maryland to Jakarta, Indonesia ("Shipment 31");

xxxii. APL Bill of Lading AYU0221032B dated July 10, 2019, with container no. TRLU7512813 aboard the M/V *Ever Learned* from Baltimore, Maryland to Jakarta, Indonesia ("Shipment 32");

xxxiii. APL Bill of Lading AYU0239078A dated July 11, 2019, with container no. CMAU5251997 aboard the M/V *CMA CGM Fidelio* from Dallas, Texas to Jakarta, Indonesia via the Port of Los Angeles, California ("Shipment 33");

xxxiv. APL Bill of Lading AYU0239078B dated July 11, 2019, with container no. CMAU6312401 aboard the M/V *CMA CGM Fidelio* from Dallas, Texas to Jakarta, Indonesia via the Port of Los Angeles, California ("Shipment 34");

xxxv. APL Bill of Lading AYU0239074 dated July 11, 2019, with container no. BHCU4911689 aboard the M/V *CMA CGM*

*Fidelio* from Chicago, Illinois to Jakarta, Indonesia via the Port of Los Angeles, California ("Shipment 35");

xxxvi. APL Bill of Lading AYU0248200 dated July 20, 2019, with container nos. TGBU5430490, TCLU9588167, and TCNU7925707 shipped aboard the M/V *Ever Lotus* from Baltimore, Maryland to Jakarta, Indonesia ("Shipment 6"); and

xxxvii. APL Bill of Lading AYU0221042 dated August 7, 2019, with container no. TCNU5737233 shipped aboard the M/V *CMA CGM Libra* from Chicago, Illinois to Jakarta, Indonesia via the port of Los Angeles, CA ("Shipment 37").

11. APL carried the Containers for Shipments 1 through 37 to Jakarta, Indonesia pursuant to the terms and conditions of the relevant APL Bills of Lading.

12. At all material times, TDR, ANDPLASTIC, and ANDPLASTIC CO. were the named shippers under the APL Bills of Lading, and thus they all qualify as a "Merchant" under Clause 1 of the Standard Terms and Conditions of the APL Bills of Lading.

13. TDR, ANDPLASTIC, and ANDPLASTIC CO. were the entities for whose account the transportation services were provided by APL, were the parties that received and benefitted from the transportation services provided by APL, and were the entities responsible for payment of charges relating to the Containers.

14. TDR, ANDPLASTIC, and ANDPLASTIC CO. tendered the Containers for Shipments 1 through 37 to APL for transportation to for which freight and other charges were lawfully incurred pursuant to the terms of the APL Bills of Lading and/or applicable tariff(s).

15. APL's Bill of Lading Standard Terms and Conditions (as applicable to the relevant APL Bills of Lading) provides the following:

> **"Merchant"** includes the Shipper, Consignee, Receiver, Holder of the Bill of Lading, Owner of the cargo or Person entitled to the possession

of the cargo or having a present or future interest in the Goods and the servants and agents of any of these, all of whom shall be jointly and severally liable to the Carrier for the payment of all Freight, and for the performance of the obligations of any of them under this Bill of Lading.

...

## 11. NOTIFICATION AND DELIVERY

...

(2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's Applicable Tariff (see Clause 2). If the Merchant fails to do so the Carrier shall be entitled, without notice, to unpack the Goods if packed in Containers and / or to store the Goods ashore, afloat, in the open or under cover, at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon the liability of the Carrier in respect of the Goods stored as aforesaid shall cease, and the costs of such storage (if paid or payable by the Carrier or any agent or Sub-Contractor of the Carrier) shall forthwith upon demand be paid by the Merchant to the Carrier.

(3) If, whether by act or omission, the Merchant directly or indirectly prevents, delays or hinder the discharge or the delivery of the Goods, any costs, expenses or liability so resulting shall be for its full account.

(4) If the Merchant fails to take delivery of the Goods within ten days of delivery becoming due under Clause 11 (2), or if in the opinion of the Carrier they are likely to deteriorate, decay, become worthless or incur charges whether for storage or otherwise in excess of their value, the Carrier may, without prejudice to any other rights which he may have against the Merchant, without notice and without any responsibility whatsoever attaching to him, sell, destroy or dispose of the Goods and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant in respect of this Bill of Lading.

…

## 13. LIEN

The Carrier, its servants or agents shall also have a lien on and the right to sell whether privately or by public auction, the Goods carried under this Bill of Lading and any documents relating thereto, for all sums including Freight and charges including but not limited to primage, deadfreight pre-carriage and/or inland Carriage whatsoever,

PLAINTIFF APL CO. PTE LTD'S COMPLAINT

demurrage, container demurrage and storage charges, detention charges, salvage, general average contribution, due and outstanding, which are for the account of the Goods or any other Contracts for the Carriage of Goods concluded between the Carrier, its servants or agents and the Merchant, at any time where such sums or Freights remains due and unpaid; and for the costs and expenses of exercising such lien and/or of such sale.

If the goods are unclaimed during a reasonable time, or whenever in the Carrier's opinion, the Goods are likely to become deteriorated, decayed or worthless, the Carrier may, at its discretion without responsibility whatsoever, auction, sell, abandon or otherwise dispose of such Goods solely at the risk and expense of the Merchant. Nothing in this Clause shall prevent the Carrier from recovering from the Merchant the difference between the amount due to him by the Merchant and the amount realised by the exercise of the rights given to the Carrier under this Clause.

### 26.   SHIPPER'S / MERCHANT'S RESPONSIBILITY

(1) All of the Persons coming within the definition of Merchant in Clause 1 shall be jointly and severally liable to the Carrier for the due fulfilment of all obligations undertaken by the Merchant in this Bill of Lading, and remain so liable throughout Carriage notwithstanding their having transferred this Bill of Lading and/or title to the Goods to any third party. Such liability shall include but not be limited to court costs, expenses and attorney's fees incurred in collecting charges and sums due to the Carrier.

(2) The Shipper warrants to the Carrier that the particulars relating to the Goods as set out overleaf have been checked by the Shipper on receipt of this Bill of Lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Shipper also warrants that the Goods are lawful Goods and contain no contraband.

(3) The Merchant shall indemnify the Carrier against all loss, damage, fines and expenses arising or resulting from any breach of any of the warranties in Clause 26 (2) hereof or from any other cause in connection with the Goods for which the Carrier is not responsible.

16. Between July 7, 2019 and September 20, 2019, the Containers for Shipments 1 through 37 arrived and were discharged in Jakarta, Indonesia and made available for collection.

17. Due to TDR, ANDPLASTIC, and ANDPLASTIC CO.'s failure to comply with local import regulations, the Containers were seized by local governmental authorities and the Containers remain idle in Jakarta, Indonesia.

18. To date, TDR, ANDPLASTIC, and ANDPLASTIC CO.C have failed to take delivery of the Containers and/or provide any other shipping instructions and/or comply with local import regulations for the Containers in Shipments 1 through 37.

19. Accordingly, the Containers for Shipments 1 through 37 remain idle at the marine terminal in Jakarta, Indonesia, thereby accruing various daily and other charges including detention and demurrage.

20. Having affected delivery of the Containers to Jakarta, Indonesia, APL fully performed all of its obligations under the APL Bills of Lading.

21. As a result of TDR, ANDPLASTIC, and ANDPLASTIC CO.'s failure to take delivery of the Containers, and/or provide any other shipping instructions, and/or comply with local import regulations, APL has incurred damages, liabilities, charges, expenses, fees and costs for detention, demurrage, and destruction.

22. Under the terms of the APL Bills of Lading and/or applicable tariffs, TDR, ANDPLASTIC, and ANDPLASTIC CO. are obligated to pay these costs, damages, and expenses due and owing to APL.

23. As of July 6, 2020, these costs, damages and expenses due and owing by Defendants to APL total US$1,981,043. These costs, damages and expenses continue to accrue while the Containers remains idle.

24. APL fully performed all of its obligations under the APL Bills of Lading. TDR, ANDPLASTIC, and ANDPLASTIC CO. received and benefited from the transportation services provided by APL, and are responsible for payment

of all these various damages, expenses and costs relating to the idle containers for Shipments 1 through 37.

## FIRST CAUSE OF ACTION

(For Breach of Maritime Contract)

25. APL refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 24 above.

26. APL transported and carried the Containers for Shipments 1 through 37 at the request and for the benefit of TDR, ANDPLASTIC, and ANDPLASTIC CO., in accordance with the applicable terms and conditions of the APL Bills of Lading.

27. APL fully performed all of its obligations under the APL Bills of Lading and carried the Containers from various United States and Puerto Rico ports and successfully discharged the Containers in Jakarta, Indonesia.

28. Under the applicable terms and conditions of the APL Bills of Lading and applicable law, TDR, ANDPLASTIC, and ANDPLASTIC CO. were required to provide shipping instructions and/or accept delivery, and/or comply with local import regulations for the Containers within the time provided for in APL's Bills of Lading, and agreed to be responsible and liable for any and all damages, liabilities, charges, costs, expenses and fees arising from or resulting from its failure to provide shipping instructions, and/or comply with local import regulations, and/or accept delivery of the Containers.

29. Under the applicable terms and conditions of the APL Bills of Lading and applicable law, TDR, ANDPLASTIC, and ANDPLASTIC CO. agreed to be liable and responsible for any and all detention, demurrage, destruction and other charges due under the APL Bills of Lading.

30. TDR, ANDPLASTIC, and ANDPLASTIC CO. breached the applicable terms and conditions of the APL Bills of Lading by failing to

1 provide shipping instructions, and/or comply with local import regulations, 2 and/or accept delivery of the Containers, and by failing to pay APL the 3 damages, liabilities, detention, demurrage, destruction, and other related 4 expenses and fees arising from their breach or breaches of the applicable 5 terms and conditions of the APL Bills of Lading.

6     31. As a proximate cause of TDR, ANDPLASTIC, and ANDPLASTIC CO.'s breach or breaches of the applicable terms and conditions of the APL Bills of Lading, breach of warranty, and the matters set forth herein, APL has incurred, and TDR, ANDPLASTIC, and ANDPLASTIC CO. are jointly and severally liable to APL for, damages in the amount exceeding $1,981,043. These costs, damages and expenses continue to accrue while the Containers for Shipments 1 through 37 remain idle.

## SECOND CAUSE OF ACTION

(Money Due Under Marine Tariff)

    32. APL refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 31 above.

    33. APL transported and carried the Containers for Shipments 1 through 37 at the request and for the benefit of TDR, ANDPLASTIC, and ANDPLASTIC CO., and in accordance with the terms and conditions of the APL Bills of Lading and subject to the rates and charges in its tariffs on file with the Federal Maritime Commission.

    34. Under the said tariffs, APL is required to collect and is entitled to recover from TDR, ANDPLASTIC, and ANDPLASTIC CO., and TDR, ANDPLASTIC, and ANDPLASTIC CO. are required to pay APL, all unpaid demurrage, detention, destruction, and any other damages, liabilities, charges, penalties, costs, expenses and fees arising from the carriage of the Container, as well as TDR, ANDPLASTIC, and ANDPLASTIC CO.'s

*Gordon Rees Scully Mansukhani, LLP*
*5 Park Plaza, Suite 1100*
*Irvine, CA 92614*

failure to provide required shipping instructions, and/or comply with local import regulations, and/or accept delivery of the Containers.

35. Despite demand for payment, TDR, ANDPLASTIC, and ANDPLASTIC CO. have failed to pay APL amounts due under the tariffs and tariff compensation is due, owing and unpaid to APL from TDR, ANDPLASTIC, and ANDPLASTIC CO. in an amount exceeding $1,981,043. Additional charges continue to accrue in accordance with the terms of said tariffs, together with attorneys' fees, costs and expenses incurred in collecting said charges.

## THIRD CAUSE OF ACTION

(Negligence)

36. APL refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 35 above.

37. At all material times herein, TDR, ANDPLASTIC, and ANDPLASTIC CO. owed APL a legal duty to exercise due care to provide required shipping instructions, and/or comply with local import regulations, and/or to accept delivery of the Containers for Shipments 1 through 37 in Jakarta, Indonesia.

38. The legal duty of TDR, ANDPLASTIC, and ANDPLASTIC CO. to APL arose because TDR, ANDPLASTIC, and ANDPLASTIC CO. are parties to the APL Bills of Lading.

39. The legal duties of TDR, ANDPLASTIC, and ANDPLASTIC CO. to APL also arose independently of the APL Bills of Lading because of many factors, including, without limitation, the foreseeability of harm to APL from its acts and omissions, the degree of certainty that APL suffered injuries, the closeness of the connection between TDR, ANDPLASTIC, and ANDPLASTIC CO.'s conduct and the injury suffered.

40. TDR, ANDPLASTIC, and ANDPLASTIC CO. breached their duty of care by, inter alia, failing to provide required shipping instructions, and/or comply with local import regulations, and/or accept delivery of the Containers in Jakarta, Indonesia, or otherwise arranging for the Containers' delivery.

41. As a proximate result of the negligence of TDR, ANDPLASTIC, and ANDPLASTIC CO., APL has incurred, and TDR, ANDPLASTIC, and ANDPLASTIC CO. are liable to APL for, additional freight, demurrage, detention, destruction, liabilities, charges, penalties, costs, expenses and fees in an amount exceeding $1,981,043, plus any additional damages and costs as they continue to accrue.

## FOURTH CAUSE OF ACTION

(FOR WORK AND LABOR PERFORMED/QUANTUM MERUIT)

42. APL refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 41 above.

43. In or about July 7, 2019, and continuing thereafter, TDR, ANDPLASTIC, and ANDPLASTIC CO. became indebted to APL for the work and labor performed by APL at the request and for the benefit of TDR, ANDPLASTIC, and ANDPLASTIC CO., for which TDR, ANDPLASTIC, and ANDPLASTIC CO. agreed to pay APL.

44. Despite due demand, TDR, ANDPLASTIC, and ANDPLASTIC CO., and each of them, owe APL an amount exceeding $1,981,043 for said work and labor performed and/or APL is entitled to recover the value of said work and labor pursuant to the doctrine of quantum meruit.

## FIFTH CAUSE OF ACTION

(FOR DECLARATORY RELIEF)

45. APL refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 44 above.

46. There is an actual controversy between APL on one hand and TDR, ANDPLASTIC, and ANDPLASTIC CO. on the other regarding the legal rights and duties of the parties with respect to the cargo in the Containers. APL contends that TDR, ANDPLASTIC, and ANDPLASTIC CO. are responsible and liable to APL for any and all damages, detention, demurrage, liabilities, charges, penalties, expenses, costs and fees arising from the carriage of the cargo in the Containers and/or TDR, ANDPLASTIC, and ANDPLASTIC CO.'s failure provide required shipping instructions, failure to comply with local import regulations, failure to accept delivery of the Containers, and/or failure to pay freight and other charges.

47. APL is informed and believes and thereupon alleges that TDR, ANDPLASTIC, and ANDPLASTIC CO. deny they are responsible and liable to APL for the aforesaid damages, detention, demurrage, liabilities, charges, penalties, expenses, costs and fees, and deny and dispute in some manner the contentions of APL.

48. APL seeks a declaration of the rights and liabilities of APL and TDR, ANDPLASTIC, and ANDPLASTIC CO. pursuant to 28 U.S.C. § 2201.

## **PRAYER**

WHEREFORE, Plaintiff APL prays for judgment against TDR, ANDPLASTIC, and ANDPLASTIC CO. as follows:

1. That the Court order judgment in favor of APL and against the TDR, ANDPLASTIC, and ANDPLASTIC CO., jointly and severally, in an amount not less than $1,981,043 and for any and all additional freight, demurrage, detention, destruction, liabilities, charges, penalties, other costs, expenses and fees caused by TDR, ANDPLASTIC, and ANDPLASTIC

-17-
PLAINTIFF APL CO. PTE LTD'S COMPLAINT

CO.'s breach or breaches of the APL Bills of Lading and/or applicable tariffs and/or negligence, for all amounts due under APL's tariffs, as well any additional damages and costs that continue to accrue at an amount to be established at trial;

    2.    That the Court award APL its attorneys' fees, costs and expenses incurred as a result of TDR, ANDPLASTIC, and ANDPLASTIC CO.'s breach or breaches and/or in collecting the sums due from TDR, ANDPLASTIC, and ANDPLASTIC CO.;

    3.    That the Court award APL interest on all of the above as well as its costs of suit;

    4.    That the Court declare the rights and liabilities of the Parties, and

    5.    That the Court award such other and further relief as the Court deems just and proper.

Dated: July 6, 2020

GORDON REES SCULLY MANSUKHANI, LLP

By: /s/ *James A. Marissen*
      James A. Marissen
      Rachel A. Weitzman
      *Attorneys for Plaintiff*
      *APL CO. PTE LTD*