UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APL CO. PTE LTD., <br><br> Plaintiff, <br><br> v. <br><br> TDR LOGISTICS INC. et al., <br><br> Defendant(s). | Case No. 2:20-cv-05999-SB-PD <br><br><br> ORDER GRANTING IN PART APPLICATIONS FOR DEFAULT JUDGMENT [DKT. NOS. 73, 74] |

    In this maritime contract action involving the alleged failure of Defendants Andplastic Trade Co., Ltd. (ATC) and Andplastic Trade Ltd. (Andplastic) to empty shipping containers that they had contracted to have transported, the Court previously denied Plaintiff APL Co. Pte Ltd.'s (APL) applications for default judgment without prejudice because Plaintiff had failed to provide sufficient evidence of damages. Dkt. No. 69. Plaintiff now renews its applications and provides evidence as to some of the actual costs for which Defendants are liable, particularly the detention and demurrage costs applicable to each shipping container. Dkt. Nos. 73, 74. Plaintiff also seeks "logistics costs" and "import local surcharges," but does not explain the legal and factual bases for claiming these damages. Since Plaintiff has furnished evidence indicating its entitlement to the detention and demurrage damages it seeks, but not to the logistics and import surcharge damages, the Court grants Plaintiff's applications in part.

I.

    The Court has recounted the factual allegations in Plaintiff's First Amended Complaint (FAC) before. Dkt. No. 69 at 1–2. Briefly, Plaintiff is a maritime shipping company. FAC ¶ 4, Dkt. No. 31. ATC and Andplastic contracted with TDR Logistics, Inc. (TDR) for the shipment of 85 containers of plastic scrap cargo from ports in the United States and Puerto Rico to Jakarta, Indonesia. *Id.* ¶ 9. TDR then contracted with Plaintiff for the carriage of the containers under 37 separate bills of lading. *Id.* ¶ 10. After Plaintiff shipped the containers to Jakarta, ATC and Andplastic failed to take delivery of or provide shipping instructions for

1

them. *Id*. ¶ 18. The containers were allegedly seized by Indonesian officials due to ATC and Andplastic's failure to comply with local import regulations and subsequently held in Jakarta for an extended period of time. *Id*. ¶¶ 17, 19. Plaintiff alleges several claims, including for breach of contract, money due under marine tariff, negligence, quantum meruit, and declaratory relief. *See id*.

## II.

Before a court may rule on a motion for default judgment, it must first determine whether the motion complies with Federal Rule of Civil Procedure 55 and Local Rule 55-1. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). The application must set forth: (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Civil Relief Act (50 U.S.C. § 3931) does not apply; and (5) that notice of the application has been served on the defaulting party (if required). *Id*. Like Plaintiff's first motions for default judgment, these procedural requirements are satisfied. The Clerk has entered defaults against both ATC and Andplastic. Dkt. Nos. 37, 47. ATC and Andplastic were served with both the FAC and Summons, Dkt. Nos. 21, 41, and these applications for default judgment, Dkt. Nos. 73-7, 74-7. Plaintiff's moving papers contain the information required by both the Local Rules and the Federal Rules of Civil Procedure; no law or rule prohibits entry of default judgments against ATC and Andplastic; ATC and Andplastic are not infants or incompetent people; and ATC and Andplastic are not exempted under the Servicemembers Civil Relief Act. Dkt. Nos. 73-1 ¶¶ 4–9, 74-1 ¶¶ 4–9.

Once these procedural requirements are met, "[g]ranting or denying a motion for default judgment is a matter within the court's discretion." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919 (C.D. Cal. 2010). The Ninth Circuit has identified seven factors courts may consider when exercising this discretion: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The Court considered each of these factors when reviewing Plaintiff's previous motions for default judgment. Dkt. No. 69 at 4–5. For the reasons explained in its prior ruling, the Court finds that the *Eitel* factors favor granting Plaintiff's applications.

The Court now turns to the issue of damages. Allegations pertaining to damages are not taken as true when considering a motion for default judgment. See *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54. The Court previously denied Plaintiff's applications for default judgment due to Plaintiff's failure to demonstrate "appreciable and actual damage." Dkt. No. 69 at 6 (citing *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000)). Damages continued to accrue on a daily basis until all of the shipping containers at issue were released by the Indonesian authorities. All of the shipping containers having been released, Plaintiff now seeks entry of judgment in the amount of $4,880,683.60 against ATC and $567,301 against Andplastic, which represents the total amount of the detention and demurrage costs, logistics costs, and import surcharge costs incurred.

The bills of lading obligate ATC and Andplastic to pay detention, demurrage, and other costs associated with shipping containers that remained idle. FAC ¶¶ 15, 29. The vast majority of the damages Plaintiff claims arise from detention and demurrage costs. "Demurrage is a charge carriers impose upon shippers or receivers for the detention of freight cars or containers beyond a certain allotted free time period for loading and unloading cargo." *Shelter Forest Int'l Acquisition, Inc. v. COSCO Shipping (USA) Inc.*, 511 F. Supp. 3d 1118, 1121 n.4 (D. Or. 2021). Demurrage fees are fees that a shipper agrees to pay in the event that freight containers are held beyond a contractual grace period.

Plaintiff has submitted evidence that the detention and demurrage tariff it charges customers, including ATC and Andplastic, for containers that are held in Indonesia after discharge is $71 per day. Dkt. Nos. 73-1 ¶¶ 12–14, 73-2, 73-3, 74-1 ¶¶ 12–14, 74-3, 74-4, 74-5. Plaintiff has indicated that ATC and Andplastic were given a short grace period prior to beginning to charge detention and demurrage fees. Dkt. Nos. 73-1 ¶¶ 13–14, 74-1 ¶¶ 13–14. Plaintiff has provided spreadsheets identifying each container, the number of days each container remained idle, and the actual detention and demurrage charges ATC and Andplastic are contractually liable for as a result of failing to empty the containers (calculated at the contractual daily rate of $71 minus the grace period). Dkt. Nos. 73-2, 74-2. Plaintiff has provided sufficient evidence of the detention and demurrage damages ATC and Andplastic are liable for.

      Plaintiff does not explain the factual and legal bases for its logistics and import surcharge costs.  Although the Bills of Lading Plaintiff submitted with its initial applications for default judgment obligate Defendants to pay costs besides detention and demurrage charges, it is unclear from the present applications what damages are included within the categories of logistics costs and import surcharges.  *See* Dkt. No. 61-3.  Assuming that import surcharges are levied by the Indonesian government, the Court has previously indicated that it seeks a showing of proof that Plaintiff actually paid or is legally obligated to pay such fees.  Dkt. No. 69 at 6.  Plaintiff has not met its burden as to logistics costs and import surcharges.  Thus, Plaintiff's request for these damages is denied.

      Plaintiff seeks post-judgment interest but does not seek prejudgment interest or costs at this time.  Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court" at a statutory rate.  28 U.S.C. § 1961(a).  Accordingly, judgment will be entered against ATC in the amount of $4,808,901 and against Andplastic in the amount of $559,338, plus post-judgment interest on these amounts.  A Final Judgment will be entered separately.

IT IS SO ORDERED.

Date: October 28, 2022

                                                Stanley Blumenfeld, Jr.
                                                United States District Judge